J. Stephen Peek
Nevada Bar No. 1758
Hale Lane Peek Dennison
 and Howard
2300 West Sahara, Eighth Floor, Box 8
Las Vegas, Nevada 89102
Telephone:   (702) 222-2500
Facsimile:    (702) 365-6940

David W. Quinto
CA Bar No. 106232
Quinn Emanuel Urquhart Oliver & Hedges, LLP
865 South Figueroa Street, 10th Floor
Los Angeles, California  90017-2543
Telephone:   (213) 443-3000
Facsimile:    (213) 443-3100

Attorneys for Plaintiffs

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEVADA

| | |
|---|---|
| NADINE MACALUSO, an individual, and GEORGE BENEDICT, as trustee of the Belfort Family Trust,<br><br>      Plaintiffs,<br><br>      vs.<br><br>SBP PROPERTY INVESTMENTS, INC., a Nevada corporation, HARRY SHUSTER, NITA SHUSTER, STANLEY SHUSTER, BRIAN SHUSTER, SHANALEE PLAZA, INC., a Nevada corporation, and DOES 1-10, inclusive,<br><br>      Defendants. | CASE NO.<br><br>COMPLAINT FOR:<br><br>(1) DECLARATORY RELIEF;<br>(2) CONVERSION;<br>(3) BREACH OF FIDUCIARY DUTY;<br>(4) FRAUD;<br>(5) FRAUDULENT CONVEYANCE; AND<br>(6) ACCOUNTING<br><br>JURY TRIAL DEMANDED |

      Plaintiffs Nadine Macaluso ("Macaluso"), individually and as a shareholder of SBP Property Investments, Inc., and George Benedict ("Benedict"), as trustee of the Belfort Family Trust ("Belfort Trust") and as a shareholder of SBP Property Investments, Inc, file this Complaint against defendants SBP Property Investments, Inc., a Nevada corporation ("SBP"); Harry Shuster; Nita Shuster; Stanley Shuster; Brian Shuster; Shanalee Plaza, Inc., a Nevada corporation ("Shanalee Plaza"); and DOES 1

through 10, upon personal knowledge as to themselves and their own acts and upon information and belief as to all other matters as follows:

## Nature of the Action

1. This action concerns investments made by plaintiffs in a Nevada corporation, SBP, which in turn owned real property in Nevada. Through a series of improper, illegal, and fraudulent actions taken by defendants -- including a convicted felon and his complicit family members -- plaintiffs' interests in those investments have been improperly encumbered, converted, and fraudulently transferred to new corporations.

2. Because the harms defendants caused affected SBP as a corporation, plaintiffs bring this derivative shareholder action for the benefit of nominal defendant SBP against other shareholders, members of its board of directors and certain executive officers.

3. Faced with a criminal conviction and a substantial money judgment against him, defendant Harry Shuster, with the knowing assistance of his complicit family members, elected to adhere to his fraudulent past, even in negotiations with the United States government. Rather than secure his debt to the United States with his own assets, defendants proceeded to encumber the assets of SBP, a corporation in which plaintiff Macaluso and a trust intended to benefit two young children own stock, and fraudulently conveyed those assets to entities in which plaintiffs had no interest.

4. In their first cause of action for declaratory relief, plaintiffs seek to determine the parties' respective corporate and real property interests at issue herein. Plaintiffs also allege that defendants converted the assets of plaintiffs' corporate interests, breached fiduciary duties owed to plaintiffs with regard to those interests, fraudulently concealed encumbrances on the corporate and real property interests of plaintiffs, and fraudulently conveyed the assets of plaintiffs' corporate interests to a corporation in which plaintiffs have no interest. Plaintiffs also seek an accounting to plaintiffs with regard to their corporate and real property interests.

## Parties

5. Plaintiff Nadine Macaluso ("Macaluso") is an individual residing in the State of California.

/ / /

6. Plaintiff George Benedict ("Benedict") is an individual residing in the State of New York. He is trustee of the Belfort Family Trust ("Belfort Trust"). Benedict joins this action as a plaintiff only in his capacity as trustee of the Belfort Trust, and not in his personal or individual capacity.

7. Nominal Defendant SBP Property Investments, Inc. ("SBP") is a Nevada corporation.

8. Plaintiffs are informed and believe, and on that basis allege, that defendant Harry Shuster is an individual residing in the State of Nevada and a majority shareholder and an officer and/or director of SBP and Shanalee Plaza, and he is being sued both as an individual and in his corporate fiduciary capacities.

9. Plaintiffs are informed and believe, and on that basis allege, that defendant Nita Shuster, wife of Harry Shuster, is an individual residing in the State of Nevada and that Nita may have been, from time to time, an officer and/or director of SBP.

10. On information and belief, defendant Stanley Shuster is an individual residing in the State of Nevada and an officer and/or director of Shanalee Plaza, and he is being sued both as an individual and in his capacity as an officer and/or director of Shanalee Plaza.

11. On information and belief, defendant Brian Shuster is an individual residing in the State of Nevada and an officer and/or director of Shanalee Plaza, and he is being sued both as an individual and in his capacity as an officer and/or director of Shanalee Plaza.

12. Defendant Shanalee Plaza, Inc. ("Shanalee Plaza") is a Nevada corporation that holds real property belonging to SBP. Plaintiffs are not aware of the true relationship between SBP and Shanalee Plaza, but plaintiffs have recently learned that SBP may have changed its name to Shanalee Plaza. In that event, plaintiffs bring this action against Shanalee Plaza as a nominal defendant.

13. Does 1 through 10, inclusive, are other individuals or entities whose true names and capacities are presently unknown but who are responsible in whole or in part for the wrongs alleged herein. Plaintiffs therefore sue such defendants by fictitious names and will seek leave of Court to amend this Complaint to allege the true names and capacities of the fictitiously named defendants when their names and capacities are ascertained.

///

14. Plaintiffs are informed and believe, and on that basis allege, that at all material times, defendants, and each of them, whether named or fictitiously designated, were the duly authorized agents, servants, employees, joint venturers, and/or co-conspirators of the other defendants, and each of them, and committed the acts alleged herein in the course and scope of their agency, service, employment, representation, joint venture or conspiracy, and that each of them was acting with the permission and consent of every other defendant.

15. At all times herein mentioned, and at the time of the transactions complained of herein, plaintiffs were the record or beneficial holders of 35% of the shares of SBP.  To the extent SBP changed its name to Shanalee Plaza, plaintiffs are the record or beneficial holders of 35% of the shares of Shanalee Plaza.

16. Plaintiffs did not make any effort to secure action from the board of directors of SBP (or Shanalee Plaza) in prosecuting this action because any such effort would have been futile in that a majority of the members of the board intentionally and directly participated in the wrongs alleged herein.

17. As set forth herein, defendants directly participated in numerous schemes to enrich themselves at the expense and to the detriment of SBP (which may now be known as Shanalee Plaza) and the Plaintiffs.  Defendants' conduct described herein could not have been the product of legitimate business judgments, as it was based on intentional, reckless, and self-interested misconduct.  These blatant violations of their fiduciary duties of care and loyalty render them incapable of considering a demand with regard to their direct personal interest in the conduct challenged herein.  Accordingly, demand is excused for being futile.

18. However, on December 28, 2005, plaintiffs delivered to SBP (which may now be known as Shanalee Plaza), via U. S. Mail, a true copy of the complaint that plaintiffs proposed to file.

19. If plaintiffs are successful in this action, a substantial benefit will result to defendant SBP (which may now be known as Shanalee Plaza), on whose behalf this action is prosecuted, and plaintiffs are entitled to their attorney's fees incurred herein.

/ / /

/ / /

Jurisdiction and Venue

20. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship between the Plaintiffs and the Defendants and the amount in controversy exceeds $75,000.

21. Venue is proper in this district pursuant to 28 U.S.C. § 1391(a) because a substantial part of the events giving rise to the claims occurred in this district.

22. This action is not a collusive one brought to confer jurisdiction on a Court of the United States which it would not otherwise have.

General Allegations

A.   The Westwood Property

23. In or about October 1994, defendant Harry Shuster approached Jordan Belfort (Belfort) regarding the opportunity to invest in an office building in West Los Angeles. Belfort, who was at the time married to plaintiff Nadine Macaluso (then Nadine Belfort), informed his wife of the investment opportunity, and she agreed to invest in the building. Belfort also shared the investment opportunity with his friend, Daniel Porush ("Porush"), who also agreed to participate in the investment.

24. On or about October 1994, plaintiffs, Porush, and defendants formed a corporation, known as 1990 Westwood Boulevard, Inc. ("Westwood, Inc"), to invest in and manage a multi-story office building located at 1990 Westwood Boulevard, Los Angeles, California 90025 ("Westwood Property"). The 1995 federal tax return for Westwood, Inc. shows that the business of the corporation was to invest in and manage real property. Attached as Exhibit A, and incorporated herein by reference, is a true and correct copy of the 1995 "U.S. Income Tax Return for an S Corporation" and accompanying depreciation schedules for Westwood, Inc.

25. Macaluso purchased and owns 17% of the shares of Westwood, Inc. The Belfort Trust purchased and owns 17% of Westwood, Inc. In a stock certificate issued to Macaluso by Westwood, Inc., Westwood, Inc. incorrectly characterizes Macaluso's interest as 35% of the corporation in her own name, rather than 17% in her name and 17% in the name of the Belfort Trust. Attached as Exhibit B, and incorporated herein by reference, is a true and correct copy of the Westwood, Inc. Stock Certificate of Nadine Belfort [Macaluso]. Macaluso's (and the Belfort Trust's) 35% interest in

Westwood, Inc. is also apparent in Macaluso's 1994 California K-1. Attached as Exhibit C, and incorporated herein by reference, is a true and correct copy of Macaluso's "1994 Shareholder's Share of Income, Deductions, Credits, etc. -- California Schedule K-1(100S)."

26. Initially, Harry Shuster purchased 50% of the shares, while Porush purchased the remaining 15% of the shares of Westwood, Inc. This allocation of shares is evidenced by a communication from Harry Shuster to Belfort, soliciting a purchase of Porush's interest in Westwood, Inc. Attached as Exhibit D, and incorporated herein by reference, is a true and correct copy of a February 18, 1998 telefax with attached letter from Shuster to Porush. (As explained in paragraph 33, below, Porush later sold his interest in Westwood, Inc. to Harry Shuster).

27. Consistent with Macaluso's interest in Westwood, Inc., defendants were then forwarding to Macaluso documents pertaining to the corporation, such as the 1995 federal tax return and depreciation schedules for Westwood, Inc. See Exhibit A.

B. <u>The Nevada Property.</u>

28. In or about late 1994, Harry Shuster solicited additional funds from Belfort for another real property investment deal. The deal concerned 8 acres of raw land in or around Las Vegas, Nevada ("Nevada Property") that Harry Shuster, Porush, and Belfort would develop for commercial use. Attached as Exhibit E, and incorporated herein by reference, is a true and correct copy of a December 14, 1994 telefax from Harry Shuster to Jordan Belfort reflecting their agreement to pursue the Nevada real property deal.

29. Belfort conferred with his wife, Macaluso, who agreed to invest in the Nevada Property. Macaluso and the Belfort Trust together transferred approximately $463,000 to Westwood, Inc. for the purpose of investing in the Nevada property.

30. Of the approximately $463,000, Macaluso invested approximately $238,000 in the Nevada Property. Her investment is reflected in a letter from her to her bank, National Westminster Bank, in which she requested that the sum of $238,000 be transferred to an account owned by Westwood, Inc. Attached as Exhibit F, and incorporated herein by reference, is a true and correct copy of the March 7, 1995 letter to National Westminster Bank.

/ / /

31. Of the approximately $463,000, the Belfort Trust invested approximately $225,000 in the Nevada Property, as reflected by a letter from the trustee, then Stephen Drescher, to National Westminster Bank, requesting that sum to be transferred to an account owned by Westwood, Inc. Attached as Exhibit G, and incorporated herein by reference, is a true and correct copy of the March 7, 1995 letter from Stephen Drescher to National Westminster Bank. The Belfort Trust's investment is also reflected in its bank account statement for that period. Attached as Exhibit H, and incorporated herein by reference, is a true and correct copy of the NatWest Bank Statement of Account for The Belfort Family Trust, reflecting the statement period of February 16, 1995, through March 16, 1995.

32. All or some of the Defendants then created SBP, a Nevada corporation, for the purpose of holding the Nevada Property. Westwood, Inc. transferred plaintiffs' investment money to SBP, which, in turn, purchased, and took title to, the Nevada Property, located at 1501 W. Sunset Road, Henderson, Nevada. SBP's interest in the Nevada Property is reflected in a preliminary title report on the property. Attached as Exhibit I, and incorporated herein by reference, is a true and correct copy of the Preliminary Title Report of 1501 W. Sunset Road, Henderson, Nevada.

33. In or about December 1997, Harry Shuster purchased Porush's interests in Westwood, Inc. and SBP for approximately $275,000, leaving Harry Shuster with a 65% interest in each of those corporations. Harry Shuster's purchase of Porush's interests is evidenced by a telefax he sent to Belfort, attached as Exhibit E.

34. On or about February 18, 1998, consistent with the fiduciary duty shareholders and officers and directors of a closely-held corporation owe to one another, Harry Shuster invited Belfort and Macaluso to purchase some of the former Porush interest. This invitation is evidenced by a telefax he sent to Belfort, attached as Exhibit E. Belfort and Macaluso declined the invitation to do so.

35. Plaintiffs have recently obtained information that suggests that SBP changed its name to Shanalee Plaza, Inc.

C. <u>Harry Shuster's Indictment and Conviction.</u>

36. On October 26, 2000, a federal grand jury issued an indictment charging Harry Shuster with securities fraud, conspiracy to commit securities fraud, and conspiracy to launder money.

/ / /

37. On or about August 1, 2001, Harry Shuster was convicted of conspiracy to commit money laundering in violation of 18 U.S.C. § 1956(h). On September 17, 2001, the court entered a post-conviction restraining order, prohibiting Harry Shuster, and any person or entity acting on his behalf, from undertaking any action that would devalue his assets. Harry Shuster's conviction and the entry of the restraining order are addressed in the Consent Order of Forfeiture he entered into with the United States. Attached as Exhibit J, and incorporated herein by reference, is a true and correct copy of the Consent Order of Forfeiture ("Consent Order").

38. In June 2002, Harry Shuster, Nita Shuster, Brian Shuster, and Stanley Shuster signed a Promissory Note in the amount of $6 million as part of an agreement to pay restitution to the United States government. Attached as Exhibit K, and incorporated herein by reference, is a true and correct copy of the Promissory Note dated June 18, 2002.

D.  Fraudulent Mortgage Liens and Conveyances

39. Confronted with a substantial debt owed to the federal government, defendants hatched a new and unlawful scheme to secure the $6 million they promised the United States. Rather than secure the debt with assets they actually owned, defendants looked to the properties that they held jointly with plaintiff Macaluso and the Belfort Trust. As security for the promissory note, Harry Shuster and Nita Shuster granted a mortgage lien on the Westwood Property to the federal government. Harry Shuster signed the promissory note on June 18, 2002, in his individual capacity and in his purported capacity as President and Chief Executive Officer of Westwood, Inc. Nita Shuster signed the promissory note on June 19, 2002, in her individual capacity and in her purported capacity as Secretary and Chief Financial Officer. The promissory note is attached as Exhibit K.

40. Harry Shuster and Nita Shuster knew that plaintiffs held a 35% interest in Westwood, Inc. Nevertheless, they intentionally concealed the plaintiffs' interest from the federal government and concealed the mortgage liens from plaintiffs.

41. As additional security for the promissory note in favor of the federal government, Harry Shuster, Brian Shuster, and Stanley Shuster granted the government a mortgage lien on the Nevada Property owned by SBP. A title report on the Nevada Property shows that SBP held title to it until SBP conveyed the property to Shanalee Plaza in 2005. On information and belief, Harry Shuster,

Brian Shuster, and Stanley Shuster represented to the federal government that Shanalee Plaza had title to the Nevada Property in 2002. They purported to grant the lien on the Nevada Property in the name of Shanalee Plaza. (It is unknown to plaintiffs if and when SBP changed its name to Shanalee Plaza) Harry Shuster signed the note on June 18, 2002, in his purported capacity as President and Chief Executive Officer of Shanalee Plaza. Brian Shuster signed the note on June 19, 2002 in his purported capacity as Secretary and Chief Financial Officer. Stanley Shuster signed the note on June 19, 2002, in his purported capacity as a shareholder. The promissory note is attached as Exhibit K.

42. At all relevant times, Harry Shuster, Brian Shuster, and Stanley Shuster knew that plaintiffs held a 35% interest in SBP (which may now be known as Shanalee Plaza). Nevertheless, they intentionally concealed the plaintiffs' interest in SBP (and/or Shanalee Plaza) and the Nevada Property from the federal government and concealed the mortgage liens from the plaintiffs. On information and belief, they also represented that Shanalee Plaza held title to the Nevada Property before 2005, when a title report shows that SBP conveyed the property to Shanalee Plaza, fully expecting the federal government to rely on this representation to the detriment of plaintiffs.

43. On June 18, 2002, Harry Shuster executed a purported "Unanimous Joint Written Consent of Shareholders, Directors and Officers of 1990 Westwood Blvd., Inc." In it, Harry Shuster falsely represented that he had obtained the approval of all shareholders, directors, and officers of Westwood, Inc. for purposes of encumbering its real property by the Promissory Note and a Deed of Trust when, as he was aware, plaintiffs were never notified of, and did not consent to, this action. Attached as Exhibit L, and incorporated herein by reference, is a true and correct copy of the purported Unanimous Joint Written Consent of Shareholders, Directors and Officers of 1990 Westwood Blvd., Inc.

44. In preparing the "Unanimous Joint Written Consent of Shareholders, Directors and Officers of 1990 Westwood Blvd., Inc.," Harry Shuster was aware that the United States government would rely on his false representations to the detriment of Macaluso and the Belfort Trust.

45. Harry Shuster intentionally concealed the encumbrance of plaintiffs' interests from plaintiffs and the United States.

///

46. On June 19, 2002, Nita Shuster executed a "Secretary's Certificate" in her capacity as Secretary of Westwood, Inc., in which she falsely stated that the shareholders, directors, and officers of the corporation approved "by Unanimous Joint Written Consent" the promissory note and a deed of trust granting a mortgage lien to the United States on the real property owned by that corporation when, as she was aware, plaintiffs were never notified of, and did not consent to, this action.  Attached as Exhibit M, and incorporated herein by reference, is a true and correct copy of the Westwood, Inc. Secretary's Certificate.

47. In preparing the "Secretary's Certificate," Nita Shuster was aware that the United States government would rely on her false representations to the detriment of Macaluso and the Belfort Trust.

48. Nita Shuster intentionally concealed the encumbrance of plaintiffs' interests from plaintiffs and the United States.

49. In the Consent Order, Harry Shuster and Nita Shuster falsely represented that they had the legal authority to sell or encumber the Westwood Property.  Harry Shuster and Nita Shuster also falsely represented that they had obtained the approval of all of the Westwood, Inc. shareholders.  The Consent Order is attached as Exhibit J.

50. In the Consent Order, Harry Shuster and Nita Shuster falsely represented that they had the legal authority to sell or encumber the real property owned by SBP(which may now be known as Shanalee Plaza).  They also falsely purported to encumber the real property of SBP (and/or Shanalee Plaza).  The Consent Order is attached as Exhibit J.

51. Both Harry Shuster and Nita Shuster agreed in the Consent Order, attached as Exhibit J, not to convey or encumber the real property held by the corporations without the approval of the United States.

52. To further their unlawful scheme, defendants sought to obscure plaintiffs' interests in the California and Nevada corporations and real properties by fraudulently assigning and conveying the assets of Westwood, Inc. and SBP to other corporate entities.

53. In or around early 2003, without seeking the approval of plaintiffs, defendants fraudulently conveyed the Westwood Property (held by Westwood, Inc.) to a different entity, Westwood, LLC.  This fraudulent conveyance of the interests of Westwood, Inc. is reflected in a grant

deed for the Westwood Property. Attached as Exhibit N, incorporated herein by reference, is a true and correct copy of a Grant Deed for the Westwood Property.

54. In or about October 2005, without notifying or seeking the approval of plaintiffs, defendants conveyed the real property held by SBP to Shanalee Plaza. This conveyance is reflected in the Nevada Property's title report, attached as Exhibit I. Plaintiffs are not aware of the true relationship between SBP and Shanalee Plaza. If plaintiffs merely changed its name to Shanalee Plaza, it is unclear why SBP would transfer title to the Nevada Property to Shanalee Plaza in 2005. Plaintiffs are informed and believe, and on that basis allege, that this conveyance and/or name change was part of defendants' scheme to improperly encumber the assets of plaintiffs without their knowledge or consent and to conceal from the federal government plaintiffs' interest in the entity(ies) that owned the Nevada Property.

## FIRST CAUSE OF ACTION
### (Declaratory Relief)

55. Plaintiffs incorporate by reference and reallege each and every allegation as set forth above as if fully set forth herein.

56. Plaintiffs' rights and obligations with regard to its corporate and real property interests are proper subjects of declaratory relief.

57. An actual controversy exists with regard to the legal rights and duties of the parties. Plaintiffs' interests are adversely affected by the mortgage lien imposed on, and fraudulent conveyance of, the Nevada real property. Moreover, plaintiffs have not been, and are not now receiving, amounts owed to them from rent or profits from the real property. Without a declaration of plaintiffs' rights and obligations with regard to its corporate and real property in Nevada in light of defendants' fraudulent schemes, plaintiffs are unable to dispose of assets they lawfully own.

58. Plaintiffs seek a declaration that:

    (a)    they own 35% of the shares and assets of SBP;

    (b)    the Nevada Property is properly the property of SBP; and/or

    (c)    they own a 35% interest in Shanalee Plaza; and

    (d)    they are entitled to 35% of all the rents and income from the real property

located at 1501 W. Sunset Road, Henderson, Nevada.

## SECOND CAUSE OF ACTION

(Conversion)

(Against Harry Shuster, Nita Shuster, Stanley Shuster, and Brian Shuster)

59. Plaintiffs incorporate by reference and reallege each and every allegation as set forth above as if fully set forth herein.

60. This is a claim brought by plaintiffs against Harry Shuster, Nita Shuster, Stanley Shuster, and Brian Shuster.

61. At all relevant times, Plaintiffs owned a 35% interest in SBP (and/or Shanalee Plaza).

62. Defendants wrongfully converted the plaintiffs' ownership interests in SBP (which may now be known as Shanalee Plaza) to their own use, which proximately caused damage to plaintiffs. By encumbering the Nevada Property to satisfy defendants' personal obligations, defendants's significantly devalued plaintiffs' property and caused damages to plaintiffs.

63. Defendants willfully and knowingly acted to damage plaintiffs' interests, did so with malice, oppression, and fraud, and in conscious disregard of plaintiffs' rights.

64. Plaintiffs are entitled to damages in an amount to be determined at trial. Plaintiffs are entitled to an award of said damages, as well as an award of punitive damages.

## THIRD CAUSE OF ACTION

(Breach of Fiduciary Duty)

(Against Harry Shuster, Nita Shuster, Brian Shuster, and Stanley Shuster)

65. Plaintiffs incorporate by reference and reallege each and every allegation as set forth above as if fully set forth herein

66. This is a claim brought by plaintiffs, individually and on behalf of SBP, against Harry Shuster, Nita Shuster, Brian Shuster, and Stanley Shuster.

67. At all relevant times, these defendants were officers, directors, and/or majority shareholders of SBP (which may now be known as Shanalee Plaza). As such, they owed fiduciary duties of care and loyalty to plaintiffs, who own a 35% interest of the corporation.

///

68. As a fellow shareholder, officer and director in a closely-held corporation, Harry Shuster owed a fiduciary duty to plaintiffs.

69. Defendants breached their fiduciary duties by, among other things: (1) failing to keep plaintiffs notified of corporate actions; (2) encumbering by mortgage liens the real property owned by the corporation without seeking and obtaining plaintiffs' approval; (3) failing to disclose the encumbrance to plaintiffs; and (4) concealing the encumbrance from plaintiffs.

70. Defendants willfully and knowingly wasted corporate assets and acted to damage plaintiffs' interests. They did so with malice, oppression, and fraud, and in conscious disregard of plaintiffs' rights.

71. Plaintiffs have suffered damages as a result of the defendants' breach of fiduciary duties, in an amount to be proved at trial. Plaintiffs are entitled to an award of said damages, as well as an award of punitive damages.

## FOURTH CAUSE OF ACTION

(Fraud -- Concealment)

(Against Harry Shuster, Nita Shuster, Brian Shuster, and Stanley Shuster)

72. Plaintiffs incorporate by reference and reallege each and every allegation as set forth above as if fully set forth herein.

73. This is a claim brought by plaintiffs against Harry Shuster, Nita Shuster, Brian Shuster, and Stanley Shuster.

74. These defendants were aware of plaintiffs' interests in SBP (which may now be known as Shanalee Plaza).

75. Nevertheless, each of these defendants acted intentionally to defraud plaintiffs by encumbering those interests.

76. As security for the promissory note in favor of the federal government, defendants purported to grant a mortgage lien on the Nevada Property. Although a title report on the Nevada Property shows that SBP held title to it until SBP conveyed the property to Shanalee Plaza in 2005. On information and belief, Harry Shuster, Brian Shuster, and Stanley Shuster represented to the federal government that Shanalee Plaza had title to the Nevada Property in 2002. They purported to grant the

lien on the Nevada Property in the name of Shanalee Plaza.

77. At all relevant times, Harry Shuster, Brian Shuster, and Stanley Shuster knew that plaintiffs held a 35% interest in SBP (which may now be known as Shanalee Plaza). Nevertheless, they intentionally concealed the plaintiffs' interest in SBP (and/or Shanalee Plaza) and the Nevada Property from the federal government and concealed the mortgage liens from the plaintiffs. On information and belief, they also represented that Shanalee Plaza held title to the Nevada Property before 2005, when a title report shows that SBP conveyed the property to Shanalee Plaza, fully expecting the federal government to rely on this representation to the detriment of plaintiffs.

78. Defendants impliedly and/or expressly represented to plaintiffs, as well as the federal government, that their interests would be protected. Defendants further impliedly and/or expressly represented to plaintiffs that plaintiffs would be treated fairly. Notwithstanding those promises, their actions show that they never had any intention of performing the representations they made to plaintiffs or the federal government. Defendants willfully and knowingly acted to harm plaintiffs' interests, did so with malice, oppression, and fraud, and in conscious disregard of plaintiffs' rights.

79. As shareholders with significant interests in SBP (and/or Shanalee Plaza) and its assets, the plaintiffs were owed a duty by the defendants to disclose material facts relating to those interests. Notwithstanding defendants' duty, defendants concealed their encumbrance of the plaintiffs' interests from plaintiffs with the intent to defraud them.

80. Defendants never notified plaintiffs of the mortgage liens against their interests. Plaintiffs were unaware of the mortgage liens and would not have assented to the encumbrances had they been notified as was required.

81. Defendants' fraud proximately caused plaintiffs damages in an amount to be proved at trial. Plaintiffs are entitled to an award of said damages, as well as an award of punitive damages.

### FIFTH CAUSE OF ACTION
(Fraudulent Conveyance)

(Against Harry Shuster, Nita Shuster, Brian Shuster, Stanley Shuster, and Shanalee Plaza)

82. Plaintiffs incorporate by reference and reallege each and every allegation as set forth above as if fully set forth herein.

83. This is a claim brought by plaintiffs against Harry Shuster, Nita Shuster, Brian Shuster, Stanley Shuster and Shanalee Plaza.

84. Notwithstanding the defendants' awareness of plaintiffs' interests in SBP (which may now be known as Shanalee Plaza), defendants were intent on furthering their unlawful scheme of encumbering and obscuring plaintiffs' corporate and real property interests. In or about October 2005, without notifying or seeking the approval of plaintiffs, these defendants conveyed the Nevada Propery from SBP to Shanalee Plaza.

85. Defendants intentionally encumbered plaintiffs' interest without plaintiffs' approval and intentionally concealed this fact from plaintiffs. Defendants willfully and knowingly acted to harm plaintiffs' interests, did so with malice, oppression, and fraud, and in conscious disregard of plaintiffs' rights.

86. Defendants' wrongdoing, as alleged above, has proximately caused plaintiffs damages in an amount to be proved at trial. Plaintiffs are entitled to an award of said damages, as well as an award of punitive damages.

## SIXTH CAUSE OF ACTION

(Accounting)

(Against all Defendants)

87. Plaintiffs incorporate by reference and reallege each and every allegation as set forth above as if fully set forth herein.

88. This is a claim brought by plaintiffs against all defendants.

89. As set forth above, defendants breached their fiduciary duties to plaintiffs and engaged in fraud.

90. Defendants owe a balance to plaintiffs in an amount that can only be ascertained by an accounting.

91. Plaintiffs therefore seek an equitable accounting of all shares in SBP and Shanalee Plaza ever owned or controlled by the defendants, or by third-party persons or entities under their control, as well as of the profit obtained upon the sale of any such shares.

///

WHEREFORE, Plaintiffs pray for judgment as follows:

1. For compensatory damages in an amount to be proved at trial;

2. For punitive and exemplary damages in sum sufficient to punish defendants and deter similar wrongdoing by others;

3. For an order declaring that plaintiffs are 35% shareholders in the entity that owns the Nevada Property and that plaintiffs are intitled to 35% of all of the rent, issues and profits from the Nevada Property;

4. For an order appointing a receiver to prevent the devaluing of the real property at issue;

5. For attorneys' fees and costs as authorized by law;

6. For an accounting by defendants of all the plaintiffs' interests relating to the corporations and real property at issue; and

7. For such other and further relief as the Court deems just and proper.

### DEMAND FOR JURY TRIAL

Trial by jury is hereby demanded for all issues so triable.

DATED:  December 30, 2005

By      /s/
    J. Stephen Peek
    Hale Lane Peek Dennison
     and Howard
    2300 West Sahara, Eighth Floor, Box 8
    Las Vegas, Nevada 89102
    Telephone:   (702) 222-2500
    Facsimile:   (702) 365-6940

    David W. Quinto
    CA Bar No. 106232
    Quinn Emanuel Urquhart Oliver & Hedges, LLP
    865 South Figueroa Street, 10th Floor
    Los Angeles, California  90017-2543
    Telephone:   (213) 443-3000
    Facsimile:   (213) 443-3100

    Attorneys for Plaintiffs